UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BILAL MUHAMMAD, | § | |
|  Petitioner, | § | |
| | § | |
| v. | § | |
| | § | EP-19-CV-286-KC |
| | § | |
| RICHARD WILES, Sheriff,[1] | § | |
|  Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Bilal Muhammad challenges his pretrial detention through an amended pro se "Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241." Pet'r's Am. Pet., ECF No. 9-1. He argues the $450,000 secured cash bail bond or corporate surety ordered by the state trial judge is excessive and violates his Eighth and Fourteenth Amendment rights. Mem. in Supp., ECF No. 9-2, pp. 1–71. He asks the Court to order his release unless the trial judge immediately holds a hearing to determine whether his continued detention is justified. Pet'r's Am. Pet., ECF No. 9-1, p. 8. But because it appears from Muhammad's amended petition that he is not entitled to § 2241 relief, the Court will dismiss it. The Court will additionally deny Muhammad a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

On December 30, 2015, police responded to a report of shots fired at a residence in El Paso, Texas, where Muhammad rented a room. They arrested Muhammad after they ordered him out of the building and he laid down an assault rifle and a pistol. They discovered the body of Lane William Wiscomb inside. They determined Wiscomb died from gunshot wounds.

---

[1] "[T]he proper respondent to a habeas petition is 'the person who has custody over [the petitioner].' " *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). Accordingly, although Muhammad named others in his original petition, he named only his custodian, El Paso County (Texas) Sheriff Richard Wiles, as Respondent in his amended petition.

Muhammad was charged with murder and booked into the El Paso County Detention Center. Muhammad was brought before a magistrate the following day and his bail was fixed at a secured cash bail bond or corporate surety in the amount of $750,000. Muhammad was indicted on March 9, 2016, for murder, in violation of Texas Penal Code § 19.02, under cause number 20160D01015 in the 168th Judicial District Court of El Paso County.

Although represented by a public defender, Muhammad filed a pro se "legal sized, yellow sheet of paper, handwritten . . . akin to a writ" of habeas corpus in cause number 2016DCV1452 on April 4, 2016, alleging "oppressive incarceration by the excessive bail." Pet'r's Am. Pet., Ex. 2 (Bond Hearing Tr.), ECF No. 9-3, pp. 8, 14.

The trial judge orally denied the writ at a hearing on April 14, 2016, after "taking into account the nature of the offense and the timing of when that occurred." *Id*. The trial judge then considered a motion to reduce Muhammad's bond. *Id*.

The Texas Constitution provides "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law." Tex. Const. art. I, § 11. The Texas Code of Criminal Procedure specifies the criteria for setting bail:

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

   5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15 (West).

During the hearing on the motion to reduce bail, Muhammad's counsel clarified that her client received Supplemental Security Income "in the amount of $841 a month" and his family was "unable to provide any moneys to assist with any kind of bond." Pet'r's Am. Pet., Ex. 2 (Bond Hearing Tr.), ECF No. 9-3, p. 18. She added that Muhammad was in a "major car accident in New Jersey" approximately three years before his arrest, sustained a "traumatic brain injury," was diagnosed with non-combat-related-post-traumatic stress disorder, and required medical care. *Id*. She explained that Muhammad required antidepressant, antipsychotic, anticonvulsant, and high blood pressure medications. *Id.* at p. 19.

The prosecutor noted that Muhammad was "charged with the offense of murder [and] the state will be asking for time in the penitentiary." *Id*. at p. 24. She further noted that Muhammad gave an address in New Jersey at the time of his arrest; did not have any family members in El Paso; had a prior conviction in Gwinnett County, Georgia, for the willful obstruction of a law enforcement officer; and had a prior arrest in Pima County, Arizona, for unlawful imprisonment and domestic violence. *Id.* at p. 25. She clarified that the Arizona charges were dismissed. *Id.* She argued that Muhammad was "a flight risk as there [was] nothing here tying him to the community." *Id.* at pp. 25–16.

The trial judge noted that if convicted, Muhammad faced a sentence of ninety-nine years to life in prison. *Id*. at p. 10. The trial judge expressed concern about Muhammad's medical care while in custody but concluded that "because of the nature of the offense and the fact that a

gun was involved [it was] reluctant to put him on a PR bond." *Id*. at p. 29. The trial judge did, however, "reduce it to $450,000 cash surety." *Id*. 1. Hence, the trial judge considered the nature of the offense and the circumstances under which it was committed, took proof on Muhammad's ability to pay, accounted for the safety of the community, and set bail to give assurance that Muhammad would appear for trial. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West).

Muhammad attempted to appeal the oral denial of his writ and the order setting his bail at $450,000. *Ex parte Muhammad*, 08-16-00079-CR, 2016 WL 3563924 (Tex. App.—El Paso June 29, 2016, pet. ref'd). His appeal was dismissed by the Eighth Court of Appeals on June 29, 2016, for lack of jurisdiction:

> The records related to cause number 2016DCV1452 do not show that the trial court has entered any order in connection with the writ application. In cause number 20160D01015, the public records reflect that Appellant filed a motion to reduce bond in that case on February 19, 2016, the trial court conducted the bond hearing on April 14, 2016, and it entered the bond order in question on that same date. We conclude that the April 14, 2016 order is an interlocutory order on Appellant's motion to reduce bond filed in cause number 20160D01015, and it cannot be reasonably construed as a denial of habeas corpus relief in cause number 2016DCV1452. A court of appeals does not have jurisdiction to hear an interlocutory appeal regarding excessive bail or the denial of bail. *Ragston v. State*, 424 S.W.3d 49, 50 (Tex. Crim. App. 2014). Accordingly, we dismiss the appeal for want of jurisdiction. All pending motions are denied as moot.

*Id*. at *1.

Muhammad filed his original federal petition for a writ of habeas corpus on October 7, 2919. Pet'r's Pet., ECF No. 1. He moved for the Court for leave to amend on October 24, 2019. Pet'r's Mot. to Amend, ECF No. 4. The Court granted his motion on December 6, 2019—and provided a preliminary analysis of his claims and suggested how he should proceed. Order, ECF No. 7.

4

In his amended petition filed on December 18, 2019, Muhammad asks the Court for a writ of habeas corpus because he is indigent and cannot make bail. Pet'r's Am. Pet., ECF No. 9-1. He argues the amount set for his bail—$450,000—is "excessive" and violates his Eighth and Fourteenth Amendment rights. Mem. in Supp., ECF No. 9-2, p. 17. He asserts the trial court has created a modern-day debtor's prison:

> [T]he 168th District Court of El Paso and all other defendants have created an illegal debtor's prison, in violation of Tex. Const. Art. I, § 18, where a judge can place an arbitrary debt on petitioner's . . . freedom, without any evidence nor findings that a person can afford the secured bail scheme, will ensure public safety, and/or court appearance—this old-age draconian-practice has been both outlawed + abolished, but the corrupt 168th judge + defendants have found a way to make this modern-day debtor's prison possible by using wealth-based detention and/or secured cash money bail system . . . punishment with indefinite-detention because you are poor.

*Id*. at p. 8. He asks the Court to intervene in his behalf and set his bail "at a reasonable $300.00 cash or $3,000.00 corporate surety if only 10% down is required with no co-signers nor collateral . . ." *Id*. at p. 15.

## APPLICABLE LAW

A state pretrial detainee is entitled—in some circumstances—to raise federal constitutional claims in a habeas corpus proceeding under 28 U.S.C. § 2241. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489 (1973); *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987). To prevail, a state pretrial detainee must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The purpose of this writ is . . . merely to inquire into the legality of a detention." *Fain v. Duff*, 488 F.2d 218, 222 (5th Cir. 1973). As a result, "habeas is not available to review questions unrelated to the cause of detention." *Pierre v. United States*, 525 F.2d 933, 935 (5th Cir. 1976). In addition, a state pretrial detainee may pursue a federal writ under § 2241 only if he meets two

prerequisites: (1) he must be in custody; and (2) he must have exhausted his available state remedies. *Dickerson*, 816 F.2d at 224. State remedies are ordinarily not considered exhausted so long as the petitioner may effectively present his claims to the state courts. *Braden*, 410 U.S. at 489. After an initial screening of a § 2241 petition, a court must order the respondent to show cause why a petition should not be granted "unless it appears from the [petition] that the . . . person detained is not entitled thereto." 28 U.S.C. § 2243.

## ANALYSIS

**A. Exhaustion.**

Muhammad clearly meets the first prerequisite for federal habeas review by virtue of his confinement in the El Paso County Jail Annex. Thus, Court must determine whether he also meets the second prerequisite—exhaustion.

Typically, in order to exhaust, a petitioner must fairly apprise the highest state court of the federal rights he believes the state violated. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985). In the pre-conviction context, a Texas pretrial detainee confined after a felony indictment may file an application for writ of habeas corpus with the judge of the court in which he is indicted. Tex. Code Crim. Proc. § 11.08. If the trial court denies habeas relief, the applicant's remedy is to take a direct appeal to an intermediate appellate court and then petition for discretionary review by the Texas Court of Criminal Appeals. *See, e.g., Ex parte Twyman*, 716 S.W.2d 951, 952 (Tex. Crim. App. 1986) (citing *Ex parte Payne*, 618 S.W.2d 380, 382 n.5 (Tex. Crim. App. 1981) (citations omitted)). A state pretrial detainee may be excused from the exhaustion requirement only if he shows exceptional circumstances or peculiar urgency. *Deters*, 985 F.2d at 795.

The trial judge orally denied what Muhammad described as a writ of habeas corpus filed in cause number 2016DCV1452 "for oppressive incarceration by the excessive bail." Pet'r's Am. Pet., Ex. 2, ECF No. 9-3, p. 14. The trial judge claimed he considered "the nature of the offense and the timing of when that occurred." *Id*. But the Eighth Court of Appeals concluded the records related to Muhammad's state writ application did "not show that the trial court . . . entered any order in connection with the writ application." *Ex parte Muhammad*, 2016 WL 3563924, at *1.

Consequently, Muhammad does not meet the second prerequisite for a federal habeas petition—and he is not entitled to § 2241 relief—because it is apparent from his pleadings and the record that he has not fairly apprised the Texas Court of Criminal Appeals of the federal rights he believes the state violated. Thus, he has not exhausted available state court remedies. Furthermore, he has not shown exceptional circumstances or peculiar urgency which would excuse the exhaustion requirement. *Deters*, 985 F.2d at 795.

But even if Muhammed had exhausted his state remedies, he would still not be entitled to § 2241 relief on his claims.

**B. Excessive Bail**

The Eighth Amendment to the United States Constitution provides "[e]xcessive bail shall not be required . . ." U.S. CONST. amend. VIII. "But a bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement." *United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988) (citing *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978); *United States v. James*, 674 F.2d 886 (11th Cir. 1982); *United States v. Beaman*, 631 F.2d 85 (6th Cir.1980); *Williams v. Farrior*, 626 F. Supp. 983 (S.D. Miss. 1986)). "[T]he determination of whether bail is excessive involves an assessment of whether the amount fixed is

'reasonably calculated' to assure the presence of the accused at trial." *Simon v. Woodson*, 454 F.2d 161, 165 (5th Cir. 1972) (citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951)). "Thus, when the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more." *Campbell v. Johnson*, 586 F.3d 835, 842 (11th Cir. 2009) (citing *United States v. Salerno*, 481 U.S. 739, 754 (1987). But the government may pursue "other admittedly compelling interests through regulation of pretrial release." *Salerno*, 481 U.S. at 753–54. The only potential substantive limitation is that "the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Id*. at 754. In other words, "[a]lthough preventing flight may be the primary function of bail, the government is free to pursue 'other admittedly compelling interests through regulation of pretrial release.' " *Campbell*, 586 F.3d at 842 (citing *Salerno*, 481 U.S. at 753). Protecting the public's safety is one such compelling interest. *Id*. (citing *Salerno*, 481 U.S. at 754–55).

In applying this standard, the Fifth Circuit Court of Appeals found that requiring $750,000 bail from a defendant deemed a flight risk was not excessive even though he was unable to pay. *United States v. McConnell*, 842 F.2d 105, 107–08 (5th Cir. 1988).[2] The Ninth Circuit Court of Appeals held that requiring an indigent defendant to post a $300,000 bond does not violate federal law where "the record shows that the detention is *not* based solely on the defendant's inability to meet the financial condition, but rather on the district court's determination that the amount of the bond is necessary to reasonably assure the defendant's

---

[2] *See also Ex parte Garner*, 10-19-00120-CR, 2019 WL 4072067, at *1 (Tex. App.—Waco Aug. 28, 2019, no pet.) (upholding a $1,000,000.00 bond for a woman accused of murdering her husband); *Ex parte Delgado*, 02-18-00417-CR, 2018 WL 5833508, at *1 (Tex. App.—Fort Worth Nov. 8, 2018, no pet.) (holding the trial court did not abuse its discretion by denying an application for writ of habeas corpus seeking a reduction in a $500,000 bond in a murder case where the indictment contained a habitual offender paragraph alleging that appellant had a prior conviction for murder and a prior conviction for assault on a public servant in retaliation for performing an official duty).

attendance at trial or the safety of the community." *United States v. Fidler*, 419 F.3d 1026, 1028 (9th Cir. 2005) (emphasis added). The First Circuit Court of Appeals determined that an indigent defendant may be required to post $25,000 bail "because without the money, the risk of flight [or danger to others] is too great." *United States v. Jessup*, 757 F.2d 378, 389 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990).

"[T]he Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment." *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971). Consequently, "[i]f the excessive bail proviso of the Eighth Amendment is applicable to the states, then federal habeas corpus is surely available to a petitioner held in violation thereof." *Simon v. Woodson*, 454 F.2d 161, 166 (5th Cir. 1972).

The Fourteenth Amendment's Due Process Clause provides that "[n]o state . . . shall deprive any person of life, liberty, or property without due process of law." U.S. CONST. Amend. XIV. It protects individuals against two types of government action. "Substantive Due Process" prevents the government from engaging in conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172 (1952). It also prevents the government from interfering with rights "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937). "Procedural Due Process" ensures that government action depriving a person of life, liberty, or property is implemented in a fair manner. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Procedural Due Process analysis "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so, we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Procedural safeguards considered constitutionally sufficient include the "right to counsel at the detention hearing"; the opportunity

to testify, present evidence, and cross-examine witnesses; standards for the judicial officer "determining the appropriateness of detention"; government burden of clear and convincing evidence; and requirement of findings of fact and reasons for detention from the judicial officer. *Salerno*, 481 U.S. at 751–52.

"Neither the Eighth Amendment nor the Fourteenth Amendment requires that everyone charged with a state offense must be given his liberty on bail pending trial." *Mastrian v. Hedman*, 326 F.2d 708, 710 (8th Cir. 1964). Indeed, "there are offenses of a nature as to which a state properly may refuse to make provision for a right to bail." *Id*. As to other offenses "for which a state has provided a right of bail it may not . . . engage in such administration as arbitrarily or discriminatorily to effect denial or deprivation of the right to a particular accused." *Id*. at 711.

Muhammad successfully asserts that he has been deprived of his fundamental right to pretrial liberty. *Salerno*, 481 U.S. at 750. He also claims that he has been deprived of a liberty interest based on the well-established principle that an indigent criminal defendant may not be imprisoned "solely because of his indigency." *Tate v. Short*, 401 U.S. 395, 398 (1971).

Nonetheless, a federal habeas court is not "entitled to act in substitution of judgment for that of the state court" when reviewing a Texas pretrial detainee's excessive bail claim. *Mastrian*, 326 F.2d at 711.

> [T]he only issue to be resolved by a federal court presented with a habeas corpus petition that complains of excessive bail is whether the state judge has acted arbitrarily in setting that bail. Any other rule would not only commit the federal courts to the burdensome task of hearing evidence upon and setting bail de novo in a host of criminal cases, but also and much more intolerable, such a rule would authorize an unwarranted and unconstitutional encroachment upon the prerogatives of the states in the due administration of their processes of criminal justice.

*Simon*, 454 F.2d at 165.[3] "While [petitioner's] constitutional rights must be safeguarded, the states, which bear the brunt of law enforcement, are equally entitled to be free from unwarranted federal intrusion." *Id.* at 166.

Muhammed offers a copy of the bond hearing transcript which shows the procedures followed by the State were constitutionally sufficient. Pet'r's Am. Pet., Ex. 2 (Bond Hearing Tr.), ECF No. 9-3.

The transcript reveals Muhammad's counsel had the opportunity to explain that his client had limited financial resources and his family could not assist with his bond. *Id*. at 18. She added that he suffered from a traumatic brain injury, was diagnosed with post-traumatic stress disorder, and required medical care. *Id*. She reported that Muhammad took antidepressant, antipsychotic, and anticonvulsant, as well as high blood pressure medications. *Id.* at 19.

The transcript further shows the prosecutor remarked that Muhammad was "charged with the offense of murder [and] the state will be asking for time in the penitentiary." *Id*. at 24. She observed that Muhammad did not have any family members in El Paso and had a prior conviction for the willful obstruction of a law enforcement officer. *Id.* at 25. She argued that Muhammad was "a flight risk as there is nothing here tying him to the community." *Id.* at 25–16.

The transcript also confirms the trial judge noted that if convicted, Muhammad faced a sentence of ninety-nine years to life in prison. *Id*. at p. 10. He expressed concern about Muhammad's medical care while in custody but concluded that "because of the nature of the offense and the fact that a gun was involved [it was] reluctant to put him on a PR bond." *Id*. at 29.

---

[3] *See* Order Granting Petitioner's Mot. to Correct Pet., ECF No. 7, p. 5 (advising Muhammad of the standard for a federal habeas court to review a state pretrial detainee's claim of excessive bail).

It appears from this record that Muhammad received constitutionally sufficient procedural safeguards. Thus, it cannot be said that the trial judge—who refused to reduce bail below 450,000 dollars—acted arbitrarily. *Simon*, 454 F.2d at 165. Indeed, the record shows the trial judge considered the charge against Muhammad, the fact that he used a weapon, the potential length of his sentence, his lack of community ties, and his potential to take flight. In light of this record, it was reasonable for the trial judge to decide that nothing short of substantial bail would assure Muhammad's presence at trial.

Muhammad argues that his bail is excessive because—due to his indigency—he cannot afford to pay bail. However, as the Court noted above, the mere fact that a detainee may not be able to pay the bail does not make it excessive. *McConnell*, 842 F.2d at 107. From the record, the trial judge set Muhammad's bail at $450,000 because he reasonably concluded that Muhammad was a flight risk and—due to the nature of the offense which involved a firearm—Muhammad presented a danger to others in the community. The trial court did *not* set Muhammad's bail at $450,000 "solely because of his indigency." *Tate*, 401 U.S. at 398.

Finally, to the extent that Muhammed claims the amount of his bail violates Texas law and the Texas Constitution, these claims are not cognizable on federal habeas review as they assert no violation of a federal constitutional right. *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a [federal] constitutional dimension."); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). A violation of a state rule of procedure, or of state law itself, is not necessarily a violation of the federal constitution. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989).

## EVIDENTIARY HEARING

The Court can resolve Muhammed's issues on the basis of the conclusive record in this case. Therefore, an evidentiary hearing is unnecessary. *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983) ("Finding the complaint devoid of factual or legal merit, . . . no hearing is necessary.").

## CERTIFICATE OF APPEALABILITY

Where the petitioner is a prisoner in state custody, a district court must issue or deny a certificate of appealability under 28 U.S.C. § 2253 when it enters an adverse final order. *See Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998) ("[Section] 2253 clearly does not encompass challenges to federal detention under § 2241. Just as clearly, however, § 2253 does encompass challenges to state detention under § 2241."). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where denial of relief is based on procedural grounds the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate that Muhammad has not yet exhausted available state court remedies or that his petition is premature. In the alternative, reasonable jurists would not debate Muhammad has not made a substantial showing of a violation of a federal constitutional right. Therefore, the Court will not issue a certificate of appealability.

**CONCLUSION AND ORDERS**

The Court concludes that Muhammad has not exhausted available state court remedies. In the alternative, the Court concludes, that Muhammad has failed to establish a violation of his constitutional rights. Accordingly, the Court also concludes that Muhammad is not entitled to relief under 28 U.S.C. § 2241, and that he is not entitled to a certificate of appealability. Consequently, the Court enters the following orders:

**IT IS ORDERED** that Bilal Muhammad's amended pro se "Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241" (ECF No. 9-1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his state remedies or, in the alternative, for failure to state a claim on which relief can be granted.

**IT IS FURTHER ORDERED** that Bilal Muhammad is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED this 4th day of March, 2020.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE